U.S. District Court
Wisconsin Eastern

FEB 0 6 2023

FILED
Clerk of Court

UNITED STATES OF AMERICA )
ex rel. SIDESOLVE LLC, )
                                                )
    Plaintiff-Relator, )
                                                )     **23-C-0157**
v.                                         ) Case No. _____
                                                ) **JURY TRIAL DEMANDED**
MAYSTEEL INDUSTRIES, LLC; ) **FILED UNDER SEAL**
MAYSTEEL PORTER'S, LLC; )
DAMAC PRODUCTS, LLC; and )
MAYSTEEL INVESTCO, LLC, )
                                                )
    Defendants. )

## COMPLAINT

1.     Relator Sidesolve LLC brings this action on behalf of itself and the United States of America against defendants Maysteel Industries, LLC; Maysteel Porter's, LLC; Damac Products, LLC and Maysteel Investco, LLC (collectively "Maysteel"), for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.     This action seeks to recover funds that were loaned to Defendants through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.     Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect

individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across multiple resources such as databases, social media, corporate filings, and other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4. While searching for potential PPP loan fraud in data released by the SBA, Sidesolve came across three affiliated sheet metal fabrication companies — Maysteel Industries, LLC; Maysteel Porter's, LLC; Damac Products, LLC and Maysteel Investco, LLC — that had applied for three separate PPP loans totaling nearly $8.5 million. All of the loans were forgiven in their entirety, plus interest.

5. Had Maysteel properly applied the SBA's Affiliation Rules for PPP loans — the purpose of which is to prevent exactly this sort of "unbundling" of companies to circumvent PPP requirements — these entities would not have been eligible for any PPP funding.

6. Maysteel received a windfall, to the detriment of the federal government and the thousands of small businesses that were unable to get the financial assistance they badly needed during the pandemic.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

8.  Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more of the defendants resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

9.  Defendants Maysteel Industries, LLC; Maysteel Porter's, LLC; and Damac Products, LLC are sheet metal fabrication companies that create custom sheet metal enclosures, cabinetry, and other containment solutions.

10. Maysteel Industries, LLC is a Wisconsin company organized in 2013.

11. Defendant Maysteel Investco, LLC was formed in Delaware in March 2017. It is the parent company of Maysteel Industries, LLC.

12. In December 2017, Maysteel Industries, LLC acquired Damac Products, LLC and has remained its parent company.

13. Porter's Group, LLC is a North Carolina company organized in 2005. In December 2019, Maysteel Industries, LLC and Porter's Group, LLC announced their merger. Upon information and belief, Maysteel Porter's, LLC is the resulting company from that merger. It was formed on October 24, 2019.

14. Maysteel Investco, LLC is the parent company of Maysteel Porter's LLC.

15. Maysteel Industries, LLC; Maysteel Porter's, LLC; and Damac Products, LLC each list a principal address of 6199 County Road W/Highway W, Allenton, WI 53002.

## THE PAYCHECK PROTECTION PROGRAM

16. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

17. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

18. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

19. Lenders were compensated by the federal government via processing fees

-4-

Case 2:23-cv-00157-SCD    Filed 02/06/23    Page 4 of 15    Document 1

based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

20. Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

21. In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

22. Each borrower certified on the First and Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

23. Borrowers were able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities.

-5-

Case 2:23-cv-00157-SCD    Filed 02/06/23    Page 5 of 15    Document 1

## FACTUAL ALLEGATIONS

24. In total, Maysteel received $8,455,641 in PPP funding, all forgiven, including interest forgiven.

25. Maysteel Industries, LLC was approved for a loan of $3,898,900 on April 7, 2020 by CIBC Bank USA. It reported 304 jobs. The entire loan amount, plus interest, was forgiven.

26. Maysteel Porter's, LLC was approved for a loan of $3,957,600 on April 7, 2020 by CIBC Bank USA. It reported 398 jobs. The entire loan amount, plus interest, was forgiven.

27. Damac Products, LLC was approved for a loan of $595,641 on April 7, 2020 by CIBC Bank USA. It reported 48 jobs. The entire loan amount, plus interest, was forgiven.

28. Including interest, Maysteel received total loan forgiveness of $8,548,262.

29. Version one of the First Draw PPP Borrower Application Form, effective April 2, 2020, required the applicant to certify in good faith that, inter alia:

   a. The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

   b. The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees [sic] or, if applicable, the

-6-

size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

c. During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

d. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

30. Some or all of the above PPP certifications were false when made by the Maysteel affiliates.

31. Maysteel applied for and received three PPP loans when it was not eligible to receive PPP funding.

### A. THE AFFILIATION RULES

32. In addition to small business concerns, a business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees **or** the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable).

33. When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the

-7-

Case 2:23-cv-00157-SCD    Filed 02/06/23    Page 7 of 15    Document 1

various entities to consolidate their employee and revenue count when evaluating their loan eligibility. Their purpose is to capture exactly the situation we appear to have with Maysteel, where a single entity owns and operates multiple subsidiaries.

34. All of the Maysteel entities qualify as "affiliates" under the SBA's Affiliation Rules for PPP Loans, codified at 13 C.F.R. § 121.301(f), under the ownership and/or management tests.

35. The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

36. The "affiliation based on management test" states that:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Ownership*

37. Texas tax information reports submitted by CFO Randy Gromowski indicate that both Maysteel Porter's, LLC and Maysteel Industries, LLC are 100 percent owned by their parent company, Maysteel Investco, LLC.

38. Damac Products, LLC is owned by Maysteel Industries, LLC.

39. Accordingly, the three entities share common ownership.

*Management*

40. Following the merger of Maysteel Industries, LLC and Porter's Group, LLC in December 2019, Kevin Matkin was named CEO of the newly-combined company.

41. Public filings by all three Maysteel entities list Matkin as CEO.

42. Guy Roberts is Chief Operating Officer and Randy Gromowski is Chief Financial Officer of Maysteel Porter's, LLC and Maysteel Industries, LLC.

43. They are both listed as "managers" in filings with the California Secretary of State for Damac Products, LLC, and so it is likely they are COO and CFO, respectively, of that company as well.

*Additional Evidence of a Single Brand*

44. The Maysteel website and social media contain additional examples of a united company. The Maysteel website, including its job listings, makes no distinction between Maysteel Industries, LLC and Maysteel Porter's, LLC; the

website simply refers to the companies as "Maysteel."

45. In 2019, Maysteel announced that it migrated its Damac division to the Maysteel website, stating that "[w]ith both Maysteel and its DAMAC division on one website, it is easy to see the synergies within the Maysteel family including experienced engineering teams, custom manufacturing skill, customer-centric approaches to business and more." The website refers customers to the same phone number to purchase both Maysteel custom enclosures, kiosks, and cabinets and Damac data center products.

46. Although Damac Products, LLC maintains a separate Twitter account, its name is listed as "DAMAC, A Maysteel Product" and states that "[u]nder the Maysteel family, DAMAC can deliver custom data center infrastructure solutions with industry-leading lead times."

### B. AFFILIATION RULE WAIVER REQUIREMENTS

47. Accordingly, to qualify as a small business eligible for a PPP loan, one or more of the Maysteel entities would have to meet one of three affiliation rule waiver requirements.

48. At least two of the three waivers to the affiliation rules do not apply: none of the entities are assigned a NAICS code beginning with 72 (sheet metal work manufacturing is NAICS code 332322), nor have any been assigned a franchise identifier code.

49. The third waiver applies where a business "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," i.e., a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

50. Sidesolve has not found any evidence that Maysteel has received any SBIC lending. For example, it does not appear in any SEC EDGAR filings, news reports, or press releases.

### C. APPLICATION OF THE AFFILIATION RULES

51. Businesses could qualify for a First Draw PPP loan under any of three size standards. First, the employee-based size standard permitted businesses to apply for loans if they had no more than 500 employees, or the business met the SBA employee-based standard for the industry in which it operates (if applicable). Second, the business could meet the revenue-based size standard, meaning the average annual receipts for the previous three full fiscal years is less than the revenue-based threshold established by the NAICS Code for the applicant's industry. Third, the business could meet the SBA's alternative size standard, which requires that the maximum tangible net worth of the business is not more than $15 million; **and** average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date

of the application is not more than $5 million.

52. Maysteel does not qualify for a PPP loan under the employment test. Maysteel falls under NAICS code 332322, which does not have an employee size standard listed. Thus, the PPP program's baseline of no more than 500 employees applies.

53. Collectively, Maysteel reported 750 jobs, and therefore exceeds the 500-employee limit.

54. Maysteel's December 2019 press release states that Maysteel "will have over 1,000 employees with six manufacturing locations covering the U.S. and Mexico, and manufacturing partner locations in Europe."

55. No revenue-based size standard is applicable to Maysteel as there is no listed revenue-based size standard for NAICS code 332322.

56. All evidence points to Maysteel far exceeding the SBA's alternative size standard, including the merger, acquisitions, and private equity investments in the company.

57. Although it consisted of different legal entities, Maysteel was a single enterprise. Accordingly, upon information and belief, Defendants did not meet the requirements for eligibility under the PPP loan program, and they should be required to repay the more than $8.4 million they received, plus the processing fees paid by the Government.

58. In its applications, Maysteel made false statements material to the PPP lending decisions.

59. Insofar as the affiliate rules could have been considered unclear at the time Maysteel applied for the First Draw PPP Loans, subsequent clarifications issued by the SBA should have informed it that it had improperly applied for and received PPP funds so that it should have repaid those funds. Instead, Maysteel not only kept the PPP funds, but it applied for and received forgiveness for those funds under false pretenses.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729 – FALSE CCLAIMS ACT

60. Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

61. As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

62. As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

63. As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

64. As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

65. Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

66. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

/s/ Jason Marcus

Jason Marcus
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com